## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-CIV-20136-BLOOM/Valle

SEAN RAIMBEAULT and
LORI-ANN RAIMBEAULT,

     Plaintiffs,

vs.

ACCURATE MACHINE & TOOL, LLC,
SUNBELT DIVERSIFIED ENTERPRISES,
LLC, 1848 CAPITAL PARTNERS LLC,
JAMES TOLZIEN, JOSEPH E. DAGROSA,
JR., DAVID NEITHARDT, JAMES WILDER
a/k/a JIMMIE WILDER AND JOHN SICILIAN,

     Defendants.

_____/

### ORDER DENYING
### DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** came before the Court on Defendants Accurate Machine & Tool,

LLC ("Accurate") and Sunbelt Diversified Enterprises, LLC's ("Sunbelt", together with

Accurate, the "Moving Defendants") Motion to Dismiss Plaintiffs Sean Raimbeault and Lori-

Ann Raimbeault's ("Plaintiffs") First Amended Complaint, ECF No. [45], for failure to join an

indispensable party (the "Motion", ECF No. [52]).  The Court has reviewed the Motion, all

supporting and opposing filings, considered the oral arguments at the September 29, 2014

hearing, the record in this case, and is otherwise fully advised in the premises.  For the reasons

set forth below, the Court denies the Motion.

### I. PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint on April 24, 2013 in the Circuit Court of

Dorchester County, South Carolina, captioned *Raimbeault v. Accurate Machine & Tool, LLC, et*

*al.*, Case No. 2013-CP-18-76, asserting claims based on fraud, constructive fraud, unjust enrichment, violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10 et. seq., and breach of contract.  *See*  ECF No. [1].  On June 21, 2013, Defendants Accurate and Sunbelt removed the action to the District Court for the District of South Carolina.  *Id*.  Accurate and Sunbelt then filed a motion to transfer venue to the Southern District of Florida on the basis of a choice of law and forum selection clause in an Asset Purchase Agreement (the "APA") dated as of September 15, 2012, entered into between Plaintiffs and Accurate and subject of several of the claims asserted by Plaintiffs.  *See* ECF No. [6].  After staying that motion pending resolution by the Supreme Court of *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568 (2013), and following Plaintiffs' consent to transfer venue in exchange for Defendants' consent to amendment of the complaint, on January 13, 2014, the District Court for the District of South Carolina transferred the action to this Court.  *See* ECF No. [15].  Plaintiffs filed their First Amended Complaint on June 18, 2014, through which they added 1848 Capital Partners LLC ("1848 Capital"), James Tolzien, Joseph E. DaGrosa, Jr., David Neithardt, James Wilder and John Sicilian as Defendants.  *See* ECF No. [45].

Plaintiffs assert the following claims in the First Amended Complaint:  (i) civil conspiracy to commit fraud, against Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; (ii) damages based on non-payment owed under a note, against Accurate; (iii) damages based on non-payment owed under a guarantee, against Sunbelt; (iv) alter ego, against 1848 Capital; (v) fraud, against Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; (vi) constructive fraud, against Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; (vii) unjust enrichment, against Accurate, Sunbelt and 1848 Capital; (viii) violation of the Florida Unfair and Deceptive Trade Practice

Act, Fla. Stat. § 501.201 et. seq. ("FUDTPA"), by Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; and (ix) breach of contract as to a consulting agreement, against Accurate.  *See* ECF No. [45].

Defendants filed the instant Motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(7), for failure to join an indispensable party as required by Fed. R. Civ. P. 19, or in the alternative, to join that party to this action.  Plaintiffs timely responded, ECF No. [58] (the "Response"), and the Moving Defendants timely replied, ECF No. [64] (the "Reply"). In addition, the parties appeared before the Court for oral arguments on September 29, 2014. ECF No. [84].

## II. RELEVANT FACTS AS ALLEGED

This suit arises from a transaction in September 2012 through which Plaintiffs sold business assets to Accurate.  Plaintiffs allege that the Defendants together conspired to defraud Plaintiffs and obtain possession of those business assets.  *See* Am. Compl. ¶ 18.

### A.    The Laurentec Transaction

WDCI, LLC f/k/a Laurentec, LLC ("Laurentec") is a limited liability company organized and existing under the laws of the State of South Carolina.  *Id*. ¶ 19.  Plaintiffs, both citizens and residents of South Carolina, were the sole shareholders of Laurentec.  *Id*. ¶ 20.  Laurentec was engaged in the production, fabrication, machining, subcontracting and sale of industrial and military defense parts on a contract basis.  *Id*. ¶ 21.

Accurate and Sunbelt are both Florida LLCs, with Accurate's principal place of business in Raleigh, North Carolina, and Sunbelt's in Miami, Florida.  *Id*. ¶¶ 2-3.  1848 Capital, a Delaware LLC with its principal place of business in Miami, Florida, is an equity owner of,

partner in, and creditor of Sunbelt and Accurate.  *Id*.  ¶¶ 5-6.  The remaining Defendants are principals and/or officers of the corporate Defendants.  *Id*. ¶¶ 10-15.

In July 2012, Sunbelt approached Plaintiffs regarding acquiring Laurentec on behalf of 1848 Capital.  *Id*. ¶ 22.  Sunbelt and Plaintiffs ultimately executed a Letter of Intent, ECF No. [45-1] ("Letter of Intent"), in August 2012 providing for the acquisition of Laurentec's assets by Sunbelt for a purchase price of $2.1 million.  Am. Compl. ¶ 27, 30; Ltr. of Intent at 2.  That total consideration was to include a $700,000 cash component, a three-year $650,000 promissory note issued by Sunbelt (and containing specific payment provisions), and a commission arrangement giving Plaintiffs 5% of sales made to certain existing customers up to $750,000.  Ltr. of Intent at 2.  As inducement for Plaintiffs to accept deferred consideration, Plaintiffs would be provided a security interest in the purchased equipment expiring upon Plaintiffs' collection of $1 million in total consideration.  *Id*.

In September 2012, Sunbelt informed Plaintiffs that the proposed transaction would require the approval of Chatham Capital Management III, LLC ("Chatham"), whom Sunbelt described as Sunbelt and Accurate's unrelated third-party senior lender.  Am. Compl. ¶ 36.  Sunbelt represented that Chatham and/or 1848 Capital refused to allow Plaintiff to retain a security interest in Laurentec's equipment.  *Id*. ¶ 38.  The transaction was modified to substitute Accurate as the purchaser, and Defendants convinced Plaintiffs to accept, in lieu of a security interest, an unconditional and irrevocable guarantee from Sunbelt.  *Id*.

The Letter of Intent expired by its own terms on September 15, 2012.  Am Comp. ¶ 40.  To prove their good faith intent to move forward with the transaction, Accurate wired Plaintiffs $35,000 as a "no strings attached deposit" later in September 2012.  *Id*. ¶¶ 40-41.  On or about November 20, 2012, Accurate as buyer, Laurentec as seller and Plaintiffs as Laurentec's

shareholders executed the APA, pursuant to which significantly all of Laurentec's assets were sold to Accurate.  *Id*. ¶ 49; APA, ECF No. [45-2] at 1.  Accurate paid $700,000 of the $2.1 million purchase price at closing, with the remaining portion of the purchase price financed by a promissory note in the principal amount of $650,000 issued by Accurate to Plaintiffs (the "Accurate Note", ECF No. [45-3]).  Am. Compl. ¶ 52; APA Art. II.  As additional consideration, Accurate provided Plaintiff Sean Raimbeault with a consulting and commission agreement providing for total payments up to $750,000 (the "Consulting Agreement", ECF No. [45-6]).  *Id*. Concurrent with the APA, Sunbelt executed a guarantee in favor of Plaintiffs for $300,000 in principal payments under the Accurate Note (the "Sunbelt Guarantee", ECF No. [45-4]).  Am. Compl. ¶ 53.  Also in connection with the APA, Plaintiffs, Accurate and Chatham entered into a subordination and intercreditor agreement (the "Intercreditor Agreement", ECF No. [45-5]).  *Id*. ¶ 55.

### B.    Chatham's Role in the Corporate Defendants and the Transaction

According to the First Amended Complaint, 1848 Capital, Sunbelt and their owned or controlled companies, including Accurate, are all borrowers, debtors, guarantors or credit parties under various agreements with Chatham.  *Id*. ¶ 34.  Chatham is a lender to the corporate Defendants under the terms of a senior credit agreement, dated July 15, 2008 (the "Senior Credit Agreement"), pursuant to which it made loans or other financial accommodations to Accurate and its related entities.  *Id*. ¶ 35; *see* ECF No. [45-5] at 1.  Rather than an unrelated or third-party lender, Plaintiffs characterize Chatham as having a financial interest in Accurate and Sunbelt, based on, e.g., warrants to purchase stock and/or membership interests in those entities.  Am. Compl. ¶¶ 58-59.

The corporate Defendants defaulted on certain obligations owed to Chatham on July 31, 2008, had been in continuous default on their senior credit facility with Chatham for the four years previous to the Laurentec transaction, and were generally unable to perform under their credit or debt obligations.  *Id*. ¶¶ 42, 68.  Despite this, Plaintiffs allege that Defendants represented to them that 1848 Capital, Sunbelt and Accurate were in good standing and performing on their obligations to Chatham and had sufficient capital to undertake the Laurentec transaction.  *Id*. ¶¶ 46, 60.  Rather, Plaintiffs allege that both Chatham and 1848 Capital provided Accurate with funding for the APA transaction, and that Defendants were in negotiations with Chatham to modify their debt obligations and cure their defaults while negotiating the Laurentec transaction.  *Id*. ¶¶ 51, 44.  In fact, Plaintiffs allege that on the same day the APA was signed, Chatham, Sunbelt and Accurate purportedly entered into a loan modification agreement curing the Defendants' default, for the sole purpose of closing the Laurentec transaction.  *Id*. ¶¶ 63-64. Defendants never informed Plaintiffs of their ongoing and developing defaults during negotiations towards and the closing of the Laurentec transaction.  *Id*. ¶ 43.

### C.    Defendants' Default and Non-Payment

On December 3, 2012, eleven days after closing the Laurentec transaction, Sunbelt, Accurate and a set of related borrowers "synchronously" defaulted on their obligations under the Senior Credit Agreement by, among other defaults, failing to make a collective payment of roughly $73,000 to Chatham.[1]  *Id*. ¶ 65.

At the time of the corporate Defendants' default on the Chatham facility, Plaintiffs remained in physical possession of the equipment sold under the APA.  *Id*. ¶ 72.  Defendants did not inform Plaintiffs of that default.  *Id*. ¶ 73.  Despite being prohibited from doing so under the

---

[1] Plaintiffs allege that Chatham has taken no action against either Accurate or Sunbelt to enforce its rights upon these defaults, and continues to "transact business" with the corporate Defendants.  *Id*. ¶¶ 79-80.

Intercreditor Agreement due to its default on its senior debt with Chatham, Accurate tendered its first payment due under the Accurate Note on January 1, 2013.  *Id*. ¶ 74.  Between that first payment and the due date of the second payment, Accurate obtained physical possession of the purchase equipment.  *Id*. ¶ 75.  Accurate refused to make any further payments under the Accurate Note.  *Id*. ¶ 76.  Sunbelt has refused to perform under the Sunbelt Guarantee and pay the amounts due and owing under the Accurate Note.  *Id*. ¶ 107.  Plaintiffs also allege that despite services provided by them to Accurate to assist in its business development, Defendants have failed to honor the Consulting Agreement by failing to pay commissions and failing to respond to customer proposals.  *Id*. ¶¶ 156, 162.

### D.    Plaintiffs' General Allegations

Plaintiffs allege that Defendants conspired to structure the Laurentec transaction as a sale to Accurate, rather than to Sunbelt, knowing Accurate had been in default with Chatham for years, and to have Plaintiffs accept a worthless guarantee from Sunbelt, instead of a security deposit in the purchase assets, all in order to defraud Plaintiffs.  *Id*. ¶¶ 45-46.  As part of that scheme to defraud Plaintiffs, Defendants persuaded Plaintiffs to execute the Intercreditor Agreement and hid Accurate and Sunbelt's continuing and developing defaults and inability to perform under their senior obligations to Chatham.  *Id*. ¶¶ 46, 56, 68, 70.  "Plaintiffs would not have agreed to finance the purchase of Laurentec's assets had they known that they would have no effective ability to enforce the agreements" due to Accurate and Sunbelt default and operation of the Intercreditor Agreement.  *Id*. ¶¶ 46, 70.  Plaintiffs further contend that Defendants conspired to intentionally default on their credit facility to avoid paying Plaintiffs.  *Id*. ¶ 67.  Finally, they allege that Defendants had Accurate make the first and only payment to Plaintiffs

under the Accurate Note, with the intention to refuse to make any future payments under the Note, in order to secure Plaintiffs' physical release of the purchase assets.  *Id*. ¶¶ 76-78.

> **E.     The Intercreditor Agreement**

The Intercreditor Agreement is, by its own terms, an inducement and condition precedent to Chatham's consummation of the transactions contemplated by the Senior Credit Agreement. It was required of Plaintiffs by Chatham in order to set forth the relative rights of Chatham and Plaintiffs with respect to the Senior Credit Agreement, the Accurate Note and certain related relationships.   Intercreditor Agreement at 1.   The Intercreditor Agreement contains several provisions and definitions pertinent to this determination, including:

> "**Permitted Subordinated Debt Payments**" shall mean payments of regularly scheduled payments of interest on and principal of the Subordinated Debt due and payable on a non-accelerated basis in accordance with the terms of the Subordinated Debt Documents as in effect on the date hereof or as modified in accordance with the terms of this Agreement.
>
> "**Subordinated Debt**" shall mean all of the obligations of the Company to Subordinated Creditor evidenced by or incurred pursuant to the Subordinated Debt Documents.
>
> "**Subordinated Debt Documents**" shall mean the Subordinated Note, any guaranty with respect to the Subordinated Debt and all other documents, agreements and instruments now existing or hereinafter entered into evidencing or pertaining to all or any portion of the Subordinated Debt.
>
> Pursuant to an Asset Purchase Agreement . . . Subordinated Creditor is extending credit to the Company as evidenced by a Subordinated, Unsecured Promissory Note (as the same may be replaced. amended, restated, supplemented or otherwise modified from time to time; and together with any other promissory notes issued by the Company to Subordinated Creditor, the "**Subordinated Note**").
>
> **Section 2.1     Subordination of Subordinated Debt to Senior Debt**.  The Company covenants and agrees, and Subordinated Creditor by its acceptance of the Subordinated Debt Documents (whether upon original issue or upon transfer or assignment) likewise covenants and agrees, notwithstanding anything to the contrary contained in any of the Subordinated Debt Documents, that the payment of any and all of the Subordinated Debt shall be subordinate and subject in right and time of payment, to the extent and in the manner hereinafter set forth, to the prior indefeasible payment in full in cash of all Senior Debt.

8

**Section 2.3(a)**     **Subordinated Debt Payment Restrictions**.  Notwithstanding the terms of the Subordinated Debt Documents, the Company hereby agrees that it may not make, and Subordinated Creditor hereby agrees that it will not accept. any Distribution with respect to the Subordinated Debt until Discharge of Senior Debt shall have occurred; provided, however, that the Company may make and Subordinated Creditor may accept Permitted Subordinated Debt Payments so long as, at the time of each payment, (i) no Senior Default exists which has not been cured or waived and (ii) after giving effect to such payment. the Company and its subsidiaries shall be in full compliance on a pro forma basis with each of the financial covenants set forth in Section 4 of the Senior Credit Agreement which relates exclusively to the Company and/or its subsidiaries as of the most recently reported fiscal period (as though such payment was made on the first day of such relevant fiscal period) (the conditions set forth in (i) and (ii) above, the "**Permitted Pavement Conditions**").

**Section 2.4**     **Subordinated Debt Standstill Provisions**.  Until Discharge of Senior Debt shall have occurred, Subordinated Creditor shall not, without the prior written consent of Agent, take any Enforcement Action with respect to the Subordinated Debt.  . . . Any Distributions or other proceeds of any Enforcement Action obtained by Subordinated Creditor in violation of the foregoing prohibition shall in any event be held in trust by it for the benefit of Agent and Senior Lenders and promptly paid or delivered to Agent for the benefit of Senior Lenders in the form received until Discharge of Senior Debt shall have occurred.

**Section 18**.     **CONSENT TO JURISDICTION**. EACH OF SUBORDINATED CREDITOR AND THE COMPANY HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE COUNTY OF FULTON, STATE OF GEORGIA AND IRREVOCABLY AGREES THAT, SUBJECT TO AGENT'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE LITIGATED IN SUCH COURTS.

ECF No. [45-5].  The Intercreditor Agreement further defines Chatham as the "Agent", Plaintiffs as the "Subordinated Creditors", and Accurate as the "Company".  *Id*.  Plaintiff has stated that "[i]f enforceable, the Standstill Provision operates to preclude the Plaintiffs from enforcing the Subordinated Debt . . . in the event that Accurate defaulted under its loan with Chatham" and that "the Intercreditor Agreement [] purportedly precludes the enforcement of the Accurate Note and the Sunbelt Agreement under the Standstill Provision in the event that Accurate was in default on its loan with Chatham."  Am. Compl. ¶¶ 57, 71.

## IV. DISCUSSION

Defendants Accurate and Sunbelt argue that Chatham is both a necessary and indispensable party to this action, primarily because the relief sought by Plaintiffs – payment under the Accurate Note and Sunbelt Guarantee – would abrogate the Intercreditor Agreement to which Chatham is a party and whose rights, as senior lender to Accurate and Sunbelt, the agreement was designed to protect.  The Moving Defendants further characterize Plaintiffs as challenging the validity or enforceability of the Intercreditor Agreement itself.  Finally, the Moving Defendants contend that "Plaintiffs have made allegations of wrongdoing (and fraud) not only against the current Defendants, but against Chatham."  Mtn. at 4.  Plaintiffs counter that complete relief can be afforded to all current parties to this action without joining Chatham because they are suing for a monetary judgment under only the Accurate Note, the Sunbelt Guarantee, the Consulting Agreement and the Defendants' tortious activity.  Plaintiffs maintain that they do not challenge the Intercreditor Agreement in this action.  For the same reasons, Plaintiffs argue that Chatham has no interest relating to this litigation, either at risk of impairment due to Chatham's absence, or such that the current parties would be subject to inconsistent obligations when the Court disposes of this action.  The parties further disagree as to whether, even if Chatham's joinder is required if feasible, Chatham should be considered indispensable to this action – an argument which centers on the forum selection clause in the Intercreditor Agreement ostensibly requiring litigation in Georgia, not before this Court.

### A.      Standard for Dismissal for Failure to Join

Dismissal of an action pursuant to Fed. R. Civ. P. 12(b)(7), for failure to join a party under Fed. R. Civ. P. 19, is a "two-step inquiry."  *See Focus on the Family v. Pinellas Suncoast*

*Transit Authority*, 344 F.3d 1263, 1279 (11th Cir. 2003); *New Hampshire Ins. Co. v. Cincinnati Ins. Co.*, 2014 WL 3428911, at *2 (S.D. Ala. July 15, 2014).

"First, a court must decide whether an absent party is required in the case under Rule 19(a)."  *Int'l Importers, Inc. v. Int'l Spirits & Wines, LLC*, 2011 WL 7807548, at *8 (S.D. Fla. July 26, 2011) (citing *Molinos Valle del Cibao v. Lama,* 633 F.3d 1330, 1344 (11th Cir. 2011)). If a court determines that an absent party does satisfy the Rule 19(a) criteria, i.e., that the party is a required party, the court must order that party joined if its joinder is feasible.  *See* Fed. R. Civ. P. 19(a)(2); *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 842 F. Supp. 2d 1360, 1365-66 (N.D. Ga. 2012)).  If the absent party is not required, the litigation continues as is.  *See*, *e.g.*, *Developers Sur. & Indem. Co. v. Harding Vill., Ltd.*, 2007 WL 465519, at *2 (S.D. Fla. Feb. 9, 2007).  "A party is not necessary simply because joinder would be convenient, or because two claims share common facts."  *S. Co. Energy Mktg., L.P. v. Virginia Elec. & Power Co.*, 190 F.R.D. 182, 185 (E.D. Va. 1999); *see also Innotex Precision Ltd. v. Horei Image Products, Inc.*, 679 F. Supp. 2d 1356, 1362 (N.D. Ga. 2009) ("the inconsistent obligations test is not met when monetary relief is at issue" (citations omitted)); *Kenko Int'l, Inc. v. Asolo S.r.l.*, 838 F. Supp. 503, 506 (D. Colo. 1993) (requiring "legally protected interest, and not merely a financial interest or interest of convenience").  Rather, an absent party is considered necessary (i) if, in its absence, the court cannot accord complete relief among the existing parties to the action; (ii) if the nonparty's absence would have a prejudicial effect on that party's ability to protect its interest relating to the subject of the action; or (iii) if, due to the absent party's related interest, the non-party's absence would leave the existing parties at a substantial risk of incurring inconsistent obligations upon the court's disposition of the current action.  Fed. R. Civ. P. 19(a)(1); *see also City of Marietta v. CSX Transp. Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999) (Per Rule 19(a), the

first question is "whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations.")

Second, if the absent party's joinder is not feasible – i.e., joinder would defeat the court's subject-matter jurisdiction, the absent party is not subject to the court's personal jurisdiction, or the absent party properly objects to the venue of the action – the court must consider if, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b); *see Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669 (11th Cir. 1982) ("[T]he court must [first] ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible.  If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.").  "Thus, dismissal for failure to join an indispensable party is only appropriate where the nonparty cannot be made a party."  *Mid-Continent Cas. Co. v. Basdeo*, 2009 WL 2450386, at *2 (S.D. Fla. Aug. 7, 2009) (citing *Focus on the Family*, 344 F.3d at 1280; *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999)).

Rule 19(b) enumerates a list of the most significant factors considered in determining whether joinder of an absent party is indispensable, which includes "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder" of the absentee.  Fed. R. Civ. P. 19(b).  Those factors "must be reviewed in light of pragmatic concerns, especially the effect on the parties and the litigation."  *Sierra Club v. Leathers*, 754 F.2d 952, 954 (11th Cir. 1985) (citations omitted).  Finally, Rule 19(a)(3) provides that "[i]f a joined party objects to venue and

the joinder would make venue improper, the court must dismiss that party.  Fed. R. Civ. P. 19(a)(3).

### B.  Whether Chatham is a Required Party under Rule 19(a)(1)

Whether Chatham is a required party in this litigation under Rule 19 turns on a consideration of Plaintiffs' several claims and their relationship with both the current parties and with Chatham.

*Alter Ego Claim*.  Plaintiffs' alter ego claim is a means of implicating all of the corporate Defendants – 1848 Capital along with Accurate and Sunbelt – in Plaintiffs' other causes of action.  Even acknowledging Plaintiffs' allegation of Chatham's financial and potentially equity interest in the corporate Defendants, the alter ego claim cannot be fairly read to assert that any of the named Defendants are the alter ego of Chatham.  Therefore, the alter ego claim has no bearing on the issue of Chatham's required joinder to this action.

*Tort Claims*.  Plaintiffs' claims sounding in tort and for violation of FUDTPA do not implicate required joinder.  "It is a basic rule of the law of joinder that 'it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.'"  *United States v. Janke*, 2009 WL 2525073, at *2 (S.D. Fla. Aug. 17, 2009) (quoting *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990)); *DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006) (complete relief available where liability as to absent party is joint and several with current party); *Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970) ("Rule 19 . . . was not meant to unsettle the well-established authority to the effect that joint tortfeasors or coconspirators are not persons whose absence from a case will result in dismissal for non-joinder."); *see also Laker Airways*, 182 F.3d at 847 ("joint tortfeasors need not all be joined in one lawsuit").  The Moving Defendants understand Plaintiffs to imply wrongdoing on the part of Chatham in their First Amended Complaint.  However, Plaintiffs need

not prove any action by Chatham to succeed on their claims for fraud, conspiracy, unjust enrichment and unfair trade practices against the named Defendants.  *See Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens Cvc Tur Limitada*, 2010 WL 1524313, at *8 (S.D. Fla. Apr. 14, 2010); *Axiom Worldwide, Inc. v. Becerra*, 2009 WL 1347398, at *4 (M.D. Fla. May 12, 2009).  If they so desire, Plaintiffs can separately sue Chatham in tort for the alleged conspiracy.[2] Therefore, this Court can accord complete relief to all current parties to this action as to the tort and FUDTPA claims even absent Chatham, and Chatham's interests are not implicated by those claims such as to require its joinder to this action.

   ***Contract-Based Claims***.  In cases challenging the enforceability or validity of a contract, joinder of all parties to that contract will typically be required.  *See Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1156-57 (9th Cir. 2002) (a party to a contract is necessary, and if not susceptible to joinder, indispensable party to litigation seeking to decimate that contract).  This is true primarily because the absent contract party has a legally protected interest in the outcome of the litigation.  In addition, non-joinder of a contract-party would undermine the court's ability to render complete relief among existing parties, since the absent party would not be bound by the court's judgment on the challenged contract.  *See Fireman v. Travelers Cas. & Sur. Co. of Amer.*, 2011 WL 743069, at *4 (S.D. Fla. Feb. 24, 2011) (joinder of absent contract party in case seeking contract reformation required due to absent party's interest in litigation); *Hardy v. IGT, Inc.*, 2011 WL 3583745, at **5-6 (M.D. Ala. Aug. 15, 2011) (parties to contract where rescission sought must be joined); *NFC Acquisition, LLC v. Comerica Bank*, 640 F. Supp. 2d 964, 973 (N.D. Ohio 2009) ("invalidation of one of the intertwining contracts could create inconsistent obligations for the parties").

---

[2] The Court notes that, at the September 29 hearing, Plaintiffs stressed that they have not sued Chatham, and stated that they do not have any reason to believe Chatham was involved in the alleged fraud or conspiracy.

However, when the subject litigation involves a contract under which an absent party has no rights or obligations, even though the absent party may be impacted by the pending action due to a separate contract to which it is a party but that is not at issue, joinder of that absent party will not be required to determine obligations under the disputed contract.  *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387-88 (2d Cir. 2006).  The Second Circuit's decision in *MasterCard* is instructive on this point.  There, MasterCard sued the soccer governing body FIFA for breach of a sponsorship agreement.  In a subsequent contract separate from the MasterCard contract at issue, FIFA granted those same sponsorship rights to Visa.  The court held that, even though MasterCard's prior contractual rights with FIFA may have precluded FIFA's ability to grant the sponsorship rights to Visa, Visa was not a necessary party required to be joined to the MasterCard litigation.  *Id.*  Visa's contractual rights were not at issue in MasterCard's action, and Visa's absence from that litigation would not prevent it from suing FIFA for breach of its separate contract in the event MasterCard prevailed in its action.  *Id.*

This reasoning – requiring joinder of parties to a challenged contract but not non-parties to the contract at issue who are otherwise impacted by the court's adjudication of that contract – is reinforced by the distinction drawn between "inconsistent obligations" as articulated in Rule 19 and inconsistent adjudications or results.  "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.  Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum."  *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998); *see also New Hampshire Ins.*, 2014 WL 3428911, at *4 (possibility of inconsistent adjudications does not require joinder).  Joinder is not required where separate contracts or claims litigated in

separate proceedings logically require the same result, but can practically result in conflicting adjudications.  *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 411-13 (3d Cir. 1993) ("The possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic does not trigger the application of Rule 19." (citations omitted)); *Evergreen Marine Corp. v. Welgrow Int'l Inc.*, 942 F. Supp. 201, 206 (S.D.N.Y. 1996) ("Rule 19 does not protect a party from logically inconsistent results, only inconsistent obligations."). Furthermore, there is no risk of inconsistent obligations in a case involving only monetary damages.  *See*, *e.g.*, *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, 2009 WL 2135396, at *5 (S.D.N.Y. July 16, 2009).

As an initial matter, the Court notes that Plaintiffs and Chatham are not "joint obligees" as that term is used to require joinder under Rule 19.  Joint obligees are typically considered necessary and indispensable parties, *see Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586-87 (11th Cir. 1983), but only where the duty or promise at issue was made to the obligees jointly, not separately.  *See*, *e.g.*, *Bry-Man's, Inc. v. Stute*, 312 F.2d 585 (5th Cir. 1963) (joint obligees under single contract were necessary parties in an action for enforcement of that obligation).  Parties who both happen to be obligees of the same obligor, but under separate contracts, are not "joint obligees" for purposes of mandating joinder.  *See Jet Pay, LLC v. RJD Stores, LLC*, 2011 WL 2708650, at **7-8 (S.D. Fla. July 12, 2011) (obligee under separate contract not a required party).

The only contract to which Chatham is a party under consideration here is the Intercreditor Agreement.  While there is language in both the Accurate Note and the Sunbelt Guarantee that contemplates the Intercreditor Agreement or otherwise enforces its subordination

and standstill provisions,[3] that alone does not require Chatham's joinder to this action. Chatham's contractual rights are not themselves at issue in either the Note or the Guarantee. And if the Court ultimately determines that, as between the parties to this litigation, the Defendants are liable to Plaintiffs under the Accurate Note and/or Sunbelt Guarantee despite provisions therein requiring subordination or deferral of Plaintiffs' debt, Chatham can separately sue its debtors or Plaintiffs to enforce the Intercreditor Agreement. *See MasterCard*, 471 F.3d at 387-88.  Any potentially conflicting judgments that may ensue are not "conflicting obligations" which would require joinder under Rule 19.  *See Delgado*, 139 F.3d at 3; *Janney Montgomery Scott*, 11 F.3d at 411-13; *Evergreen Marine*, 942 F. Supp. at 206.  Further, any potentially conflicting adjudication would involve only monetary damages, which in and of itself undermines required joinder.  *See Davidson Well Drilling*, 2009 WL 2135396 at *5.  Therefore, that Chatham's rights under the Intercreditor Agreement may be impacted by this Court's adjudication of the current parties' rights and liabilities under the Accurate Note and Sunbelt Guarantee does not require joinder of Chatham to this action.  The Court can render complete relief to the current parties absent Chatham.  Chatham's rights under the Intercreditor Agreement are not so bound up in this litigation that it cannot protect its interests absent joinder.  And this

---

[3] Section 6 of the Accurate Note provides,

> Holder by its acceptance of this Note, agrees that all amounts (including all Principal, Interest, fees, expenses, indemnities and other payments) payable by the Borrower hereunder shall be deemed to be "Subordinated Debt" and shall be subordinated to the Chatham debt under the terms of that certain Subordination and Intercreditor Agreement, dated as of the date hereof, by and among Borrower, Holder and Chatham.

ECF No. [45-3]. Section 3 of the Sunbelt Guarantee provides, in relevant part,

> Notwithstanding anything to the contrary set forth herein, the Shareholders acknowledge and agree that to the extent that any subordination documents or agreements (collectively the "Senior Documents") executed by the Shareholders and delivered to a Senior Creditor, as that term is defined in the Purchase Agreement, provide for a deferral or delay in the payment of the Obligations, and Buyer subsequently defers or delays the payment of the Obligation due in reliance of any terms of the Senior Documents, Guarantor shall be entitled to the same deferral or delay in the performance of its obligations hereunder, subject to a maximum delay or deferral in payment of sixty (60) days.

ECF No. [45-4].

Court's adjudication of Plaintiffs' claims will not expose the current parties to inconsistent obligations, whatever Chatham's rights are under the Intercreditor Agreement.[4]

Furthermore, the protections afforded Chatham under the Intercreditor Agreement do not, by their own terms, extend to the Sunbelt Guarantee.  The subordination, subordinated debt payment restriction, and standstill provisions of the Intercreditor Agreement all apply to "Subordinated Debt", which is defined as "obligations of *the Company* to Subordinated Creditor evidenced by or incurred pursuant to the Subordinated Debt Documents."  *See* Intercreditor Agreement at 4 and §§ 2.1, 2.3(a), 2.4 (emphasis added).  "The Company" refers only to Accurate.  *Id*. at 1.  Therefore, while referencing the Sunbelt Guarantee,[5] the Intercreditor Agreement itself subordinates, restricts payment on, and enforces a standstill with only as to obligations of *Accurate*.  Obligations owed by Sunbelt under the Sunbelt Guarantee are not covered.  What's more, the Guarantee on its own terms only permits deferral of Sunbelt's thereunder for sixty dates (and we now stand well past that deadline), as opposed to the complete subordination and indefinite standstill enforced by the Intercreditor Agreement.  *See* Sunbelt Guarantee § 3.  Therefore, enforcement of Chatham's interests under the Intercreditor Agreement is irrelevant to Plaintiff's claim with respect to the Sunbelt Guarantee.  Joinder, clearly, cannot be required on that basis.

In the final analysis, disposition of the Motion turns on whether Plaintiffs seek to challenge the validity or enforceability of the Intercreditor Agreement, to which Chatham is a party, through this action.  The Moving Defendants correctly point to several instances in the First Amended Complaint where Plaintiffs appear to undermine the Intercreditor Agreement.

---

[4] The same is true with regards to Plaintiffs' claim for breach of the Service Contract.
[5] "Subordinated Debt Documents" is defined to include the Accurate Note, "any guaranty with respect to the Subordinated Debt and all other documents, agreement and instruments . . . evidencing or pertaining to the Subordinated Debt."  *Id*. at 5.

For example, Plaintiffs represent that "*[i]f enforceable* . . . the Intercreditor Agreement []

*purportedly* precludes the enforcement of the Accurate Note and the Sunbelt Agreement."  Am.

Compl. ¶¶ 57, 71 (emphasis added).  However, in their Response, Plaintiffs state outright that

"[t]he validity and enforceability of the Intercreditor Agreement, whether in whole or in part, is

not a part of this litigation."  Response at 5.  When prompted by the Court at the September 29

hearing on the Motion, counsel for Plaintiffs repeatedly stated that Plaintiffs are not challenging

the Intercreditor Agreement "in these proceedings."  The Court will hold them to it.  To that end,

Plaintiffs are reminded what effect judicial estoppel would have on their claims.  *See*, *e.g.*,

*Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1367 (S.D. Fla. 2005) (citing

*Burnes v. Pemco Aeroplex*, 291 F.3d 1282 (11th Cir. 2002); *New Hampshire v. Maine*, 532 U.S.

742 (2001)).

The Court wonders how Plaintiffs will ultimately benefit from the relief they seek in this

action with respect to the Accurate Note given *their own* obligations under the Intercreditor

Agreement not to accept payment in abrogation of Chatham's senior creditor status and not to

take any enforcement action under the Note until the discharge of Chatham's senior debt.  *See*

Intercreditor Agreement §§ 2.3(a), 2.4.  At the September 29 hearing, Plaintiffs admitted that the

Intercreditor Agreement precludes acceptance by Plaintiffs of any distribution under the

Accurate Note.  They further admitted that they would likely need to initiate suit against

Chatham should they ultimately succeed in this action with respect to the Note.  Plaintiffs'

admitted violation of the Intercreditor Agreement's Standstill Provision may also preclude

equitable relief on their unjust enrichment claim.  Nevertheless, Chatham's interests under the

Intercreditor Agreement are simply not at issue here.  As such, it is not a required party under Rule 19(a)(1).[6]

### C.      Whether Chatham Would Be an Indispensable Party Under Rule 19(b)

Because the Court concludes that joinder of Chatham to this action is not required under Rule 19(a)(1), the Moving Defendants' Rule 12(b)(7) motion fails regardless of the Rule 19(b) analysis.  Had Chatham's joinder been required, however, dismissal would still have been inappropriate.

The Moving Defendants posit that the forum selection clause in the Intercreditor Agreement, designating state and federal courts in Fulton County, Georgia, and not courts in this District as the proper forum, renders venue improper and requires dismissal upon Chatham's joinder to this action.  However, the forum selection clause only requires a Georgia forum upon Chatham's election – the clause is not automatic, and Chatham could, in an action relating to the Intercreditor Agreement, forgo that election.  *See* Intercreditor Agreement § 18.  Even if Chatham were joined, and elected to enforce the forum selection clause in the Intercreditor Agreement, it is uncertain whether the forum selection clause in that agreement, or the Florida forum selection clauses in the APA (section 10.11), the Accurate Note (section 11.4) and the Sunbelt Guarantee (section 8) – contracts certainly central to this action – would govern.  *See*, *e.g.*, *Fred Lurie Assoc., Inc. v. Global Alliance Logistics, Inc.*, 453 F. Supp. 2d 1351, 1357 (S.D. Fla. 2006) (Because party "entered into two agreements with different forums selected, the possibility that it would have to litigate claims relating to its shipment in different forums was certainly a foreseeable outcome."); *Asoma Corp. v. SK Shipping Co.,* 467 F.3d 817, 822 (2d Cir. 2006) ("Where, as here, the two sides have put forth different contracts, each containing a forum

---

[6] Of course, the determination that Chatham is not a required party under Rule 19 does not speak to whether Chatham may intervene in this action under Fed. R. Civ. P. 24, or whether any of the Defendants may join Chatham to the action through, e.g., an interpleader action seeking declaratory relief under Fed. R. Civ. P. 22(a)(2).

selection clause designating a different forum, and the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide . . . which forum selection clause governs.").  And even if the Court were to give effect to Chatham's hypothetical forum election, Rule 19(a)(3) provides for dismissal of the venue-objecting *party* (i.e., Chatham), *not* dismissal of the entire action.[7]  Fed. R. Civ. P. 19(a)(3).  Thus, under no circumstances would Chatham's required joinder (and again, joinder is not required) necessitate dismissal of this action.

## V. CONCLUSION

For the aforementioned reasons, Chatham is not a required party under Rule 19. Therefore, Chatham need not be joined to this action, and dismissal pursuant to Rule 12(b)(7) is inappropriate.  The Moving Defendants' Motion must therefore be denied.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that

1. Defendants Accurate Machine & Tool, LLC and Sunbelt Diversified Enterprises, LLC's Motion to Dismiss For Failure to Join an Indispensable Party, ECF No. [52], is **DENIED.**

2. Defendants Accurate Machine & Tool, LLC and Sunbelt Diversified Enterprises, LLC's request to join Chatham Capital Management III, LLC,

---

[7] Further, since Chatham's joinder is not required, the Court need not consider whether dismissal could be warranted if Chatham's joinder was required but not feasible given the implication that dismissal for nonjoinder due to competing venue issues would strip Plaintiffs of any adequate remedy.  *See* Fed. R. Civ. P. 19(b)(4).

CASE NO.  14-CIV-20136-BLOOM/Valle

is **DENIED**.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, this 30th day of September, 2014.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record