**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 14-CIV-20136-BLOOM/Valle**

SEAN RAIMBEAULT and
LORI-ANN RAIMBEAULT,

      Plaintiffs,

vs.

ACCURATE MACHINE & TOOL, LLC,
SUNBELT DIVERSIFIED ENTERPRISES,
LLC, 1848 CAPITAL PARTNERS LLC,
JAMES TOLZIEN, JOSEPH E. DAGROSA,
JR., DAVID NEITHARDT, JAMES WILDER
a/k/a JIMMIE WILDER AND JOHN SICILIAN,

      Defendants.

_____/

**ORDER**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTIONS TO DISMISS**

      **THIS CAUSE** came before the Court on the Motions to Dismiss Plaintiffs Sean

Raimbeault and Lori-Ann Raimbeault's ("Plaintiffs") First Amended Complaint, ECF No. [45],

filed by Defendants 1848 Capital Partners LLC ("1848 Capital"), Joseph E. DaGrosa, Jr., David

Neithardt and John Sicilian (the "1848 Defendants" and the "1848 Motion", ECF No. [66]) and

Defendants James Tolzien and James Wilder, ECF No. [73] (together with the 1848 Motion, the

"Motions").  The Court has reviewed the Motions, all supporting and opposing filings, oral

argument presented at the September 29, 2014 hearing, the record in this case, and is otherwise

fully advised in the premises.  For the reasons set forth below, the Court in part grants and in part

denies the Motions.

## I. PROCEDURAL BACKGROUND

Plaintiffs filed their original Complaint on April 24, 2013 in the Circuit Court of Dorchester County, South Carolina, captioned *Raimbeault v. Accurate Machine & Tool, LLC, et al.*, Case No. 2013-CP-18-76, asserting claims based on fraud, constructive fraud, unjust enrichment, violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10 et. seq., and breach of contract against Defendants Accurate Machine & Tool, LLC ("Accurate") and Sunbelt Diversified Enterprises, LLC ("Sunbelt").  *See*  ECF No. [1].  On June 21, 2013, Accurate and Sunbelt removed the action to the District Court for the District of South Carolina. *Id*.  Accurate and Sunbelt then filed a motion to transfer venue to the Southern District of Florida on the basis of a choice of law and forum selection clause in an Asset Purchase Agreement (the "APA") dated as of September 15, 2012, entered into between Plaintiffs and Accurate and subject of several of the claims asserted by Plaintiffs.  *See* ECF No. [6]. After staying that motion pending resolution by the Supreme Court of *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568 (2013), and following Plaintiffs' consent to transfer venue in exchange for the defendants' consent to amendment of the complaint, on January 13, 2014, the District Court for the District of South Carolina transferred the action to this Court.  *See* ECF No. [15].  Plaintiffs filed their First Amended Complaint on June 18, 2014, through which they added 1848 Capital, Tolzien, DaGrosa, Jr., Neithardt, Wilder and Sicilian (the "Moving Defendants") as Defendants.  *See* ECF No. [45].

Plaintiffs assert the following claims in the First Amended Complaint:  (i) civil conspiracy to commit fraud, against Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; (ii) damages based on non-payment owed under a note, against Accurate; (iii) damages based on non-payment owed under a guarantee, against Sunbelt; (iv) alter ego,

2

against 1848 Capital; (v) fraud, against Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; (vi) constructive fraud, against Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; (vii) unjust enrichment, against Accurate, Sunbelt and 1848 Capital; (viii) violation of the Florida Unfair and Deceptive Trade Practice Act, Fla. Stat. § 501.201 et. seq. ("FUDTPA"), by Accurate, Sunbelt, 1848 Capital, Tolzien, Wilder, DaGrosa, Neithardt and Sicilian; and (ix) breach of contract as to a consulting agreement, against Accurate. *See* ECF No. [45].

The Moving Defendants filed the instant Motions to Dismiss the First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. Plaintiffs timely responded, ECF Nos. [76], [80], and the Moving Defendants timely replied, ECF Nos. [64], [82]. In addition, the parties appeared before the Court for oral arguments on September 29, 2014. ECF No. [84].

## II. RELEVANT FACTS AS ALLEGED

This suit arises from a transaction in September 2012 through which Plaintiffs sold business assets to Accurate. Plaintiffs allege that the Defendants together conspired to defraud Plaintiffs and obtain possession of those business assets. *See* Am. Compl. ¶ 18.

### A.     The Laurentec Transaction

WDCI, LLC f/k/a Laurentec, LLC ("Laurentec") is a limited liability company organized and existing under the laws of the State of South Carolina. *Id*. ¶ 19. Plaintiffs, both citizens and residents of South Carolina, were the sole shareholders of Laurentec. *Id*. ¶ 20. Laurentec was engaged in the production, fabrication, machining, subcontracting and sale of industrial and military defense parts on a contract basis. *Id*. ¶ 21.

Accurate and Sunbelt are both Florida LLCs, with Accurate's principal place of business in Raleigh, North Carolina, and Sunbelt's in Miami, Florida. *Id*. ¶¶ 2-3. 1848 Capital, a Delaware LLC with its principal place of business in Miami, Florida, is an equity owner of, partner in, and creditor of Sunbelt and Accurate. *Id*. ¶¶ 5-6. The remaining Defendants are principals and/or officers of the corporate Defendants. *Id*. ¶¶ 10-15. Tolzien is the CEO, a board member and a partner of Sunbelt. *Id*. ¶ 10. Wilder is the CEO, a board member and a partner of Accurate. *Id*. ¶ 11. Sicilian, DaGrosa, Jr. and Neithardt are the three principles, partners, board members and co-founders of 1848 Capital. *Id*. ¶¶ 12-15.

In July 2012, Sunbelt approached Plaintiffs regarding acquiring Laurentec on behalf of 1848 Capital. *Id*. ¶ 22. Wilder, Tolzien and Sicilian were involved in negotiations between the parties regarding potential business opportunities. *Id*. ¶¶ 25-27. Sunbelt and Plaintiffs ultimately executed a Letter of Intent, ECF No. [45-1] ("Letter of Intent"), in August 2012 providing for the acquisition of Laurentec's assets by Sunbelt for a purchase price of $2.1 million. Am. Compl. ¶ 27, 30; Ltr. of Intent at 2. Tolzien, Wilder, Sicilian, DaGrosa and Neithardt were all involved in the Letter of Intent and subsequent negotiations for sale. Am. Compl. ¶¶ 29, 50. The total consideration was to include a $700,000 cash component, a three-year $650,000 promissory note issued by Sunbelt (and containing specific payment provisions), and a commission arrangement giving Plaintiffs 5% of sales made to certain existing customers up to $750,000. Ltr. of Intent at 2. As inducement for Plaintiffs to accept deferred consideration, Plaintiffs would be provided a security interest in the purchased equipment expiring upon Plaintiffs' collection of $1 million in total consideration. *Id*.

In September 2012, Sunbelt, through Tolzien, informed Plaintiffs that the proposed transaction would require the approval of Chatham Capital Management III, LLC ("Chatham"),

whom Tolzien described as Sunbelt and Accurate's unrelated third-party senior lender.   Am. Compl. ¶ 36.   Sunbelt represented that Chatham and/or 1848 Capital refused to allow Plaintiffs to retain a security interest in Laurentec's equipment.   *Id*. ¶ 38.   The transaction was modified by the Defendants to substitute Accurate as the purchaser, and Defendants convinced Plaintiffs to accept, in lieu of a security interest, an unconditional and irrevocable guarantee from Sunbelt. *Id*.

The Letter of Intent expired by its own terms on September 15, 2012.  Am Comp. ¶ 40. To prove their good faith intent to move forward with the transaction, Accurate, through Wilder and on Tolzien's instruction, wired Plaintiffs $35,000 as a "no strings attached deposit" later in September 2012.  *Id*. ¶¶ 40-41.   On or about November 20, 2012, Accurate as buyer, Laurentec as seller and Plaintiffs as Laurentec's shareholders executed the APA, pursuant to which significantly all of Laurentec's assets were sold to Accurate.  *Id*. ¶ 49; APA, ECF No. [45-2] at 1. Accurate paid $700,000 of the $2.1 million purchase price at closing, with the remaining portion of the purchase price financed by a promissory note in the principal amount of $650,000 issued by Accurate to Plaintiffs (the "Accurate Note", ECF No. [45-3]).  Am. Compl. ¶ 52; APA Art. II. As additional consideration, Accurate provided Plaintiff Sean Raimbeault with a consulting and commission agreement providing for total payments up to $750,000 (the "Consulting Agreement", ECF No. [45-6]).  *Id*.  Concurrent with the APA, Sunbelt executed a guarantee in favor of Plaintiffs for $300,000 in principal payments under the Accurate Note (the "Sunbelt Guarantee", ECF No. [45-4]).  Am. Compl. ¶ 53.  Also in connection with the APA, Plaintiffs, Accurate and Chatham entered into a subordination and intercreditor agreement (the "Intercreditor Agreement", ECF No. [45-5]).  *Id*. ¶ 55.  Plaintiffs allege that Sicilian, DaGrosa, Jr. and Neithardt all personally reviewed and approved the Laurentec transaction.  *Id*. ¶ 32.

### B.        Defendants' Senior Indebtedness

According to the First Amended Complaint, 1848 Capital, Sunbelt and their owned or controlled companies, including Accurate, are all borrowers, debtors, guarantors or credit parties under various agreements with Chatham.  *Id.* ¶ 34.  Chatham is a lender to the corporate Defendants under the terms of a senior credit agreement, dated July 15, 2008 (the "Senior Credit Agreement"), pursuant to which it made loans or other financial accommodations to Accurate and its related entities.  *Id.* ¶ 35; *see* ECF No. [45-5] at 1.

The corporate Defendants defaulted on certain obligations owed to Chatham on July 31, 2008, had been in continuous default on their senior credit facility with Chatham for the four years previous to the Laurentec transaction, and were generally unable to perform under their credit or debt obligations.  *Id.* ¶¶ 42, 68.  Plaintiffs allege that all of the Defendants, including the individual principals involved in the transaction, knew that the Senior Credit Agreement was in default.  *Id.* ¶ 61.  Despite this, Plaintiffs allege that Defendants represented to them that 1848 Capital, Sunbelt and Accurate were in good standing and performing on their obligations to Chatham and had sufficient capital to undertake the Laurentec transaction.  *Id.* ¶¶ 46, 60.  Rather, Plaintiffs allege that both Chatham and 1848 Capital provided Accurate with funding for the APA transaction, and that Defendants were in negotiations with Chatham to modify their debt obligations and cure their defaults while negotiating the Laurentec transaction.  *Id.* ¶¶ 51, 44.  In fact, Plaintiffs allege that on the same day the APA was signed, Chatham, Sunbelt and Accurate purportedly entered into a loan modification agreement curing the Defendants' default, for the sole purpose of closing the Laurentec transaction.  *Id.* ¶¶ 63-64.  Defendants never informed Plaintiffs of their ongoing and developing defaults during negotiations towards, and the closing of, the Laurentec transaction.  *Id.* ¶ 43.

### C.      Defendants' Default and Non-Payment

On December 3, 2012, eleven days after closing the Laurentec transaction, Sunbelt, Accurate and a set of related borrowers "synchronously" defaulted on their obligations under the Senior Credit Agreement by, among other defaults, failing to make a collective payment of roughly $73,000 to Chatham.  *Id.* ¶ 65.

At the time of the corporate Defendants' default on the Chatham facility, Plaintiffs remained in physical possession of the equipment sold under the APA.  *Id.* ¶ 72.  Defendants did not inform Plaintiffs of that default.  *Id.* ¶ 73.  Despite being prohibited from doing so under the Intercreditor Agreement due to its default on its senior debt with Chatham, Accurate tendered its first payment due under the Accurate Note on January 1, 2013.  *Id.* ¶ 74.  Between that first payment and the due date of the second payment, Accurate obtained physical possession of the purchase equipment.  *Id.* ¶ 75.  Accurate refused to make any further payments under the Accurate Note.  *Id.* ¶ 76.  Sunbelt has refused to perform under the Sunbelt Guarantee and pay the amounts due and owing under the Accurate Note.  *Id.* ¶ 107.  Plaintiffs also allege that despite services provided by them to Accurate to assist in its business development, Defendants have failed to honor the Consulting Agreement by failing to pay commissions and failing to respond to customer proposals.  *Id.* ¶¶ 156, 162.

### D.      Plaintiffs' General Allegations

Plaintiffs allege that Defendants conspired to structure the Laurentec transaction as a sale to Accurate, rather than to Sunbelt, knowing Accurate had been in default with Chatham for years, and to have Plaintiffs accept a worthless guarantee from Sunbelt, instead of a security deposit in the purchase assets, all in order to defraud Plaintiffs.  *Id.* ¶¶ 45-46.  As part of that scheme to defraud Plaintiffs, the corporate and individual Defendants persuaded Plaintiffs to

execute the Intercreditor Agreement and hid Accurate and Sunbelt's continuing and developing defaults and inability to perform under their senior obligations to Chatham.  *Id*. ¶¶ 46, 56, 62, 68, 70.  "Plaintiffs would not have agreed to finance the purchase of Laurentec's assets had they known that they would have no effective ability to enforce the agreements" due to Accurate and Sunbelt default and operation of the Intercreditor Agreement.  *Id*. ¶¶ 46, 70.  Plaintiffs further contend that Defendants conspired to intentionally default on their credit facility (despite having adequate liquidity to avoid default) to avoid paying Plaintiffs.  *Id*. ¶¶ 66-67.  Finally, they allege that Defendants had Accurate make the first and only payment to Plaintiffs under the Accurate Note, with the intention to refuse to make any future payments under the Note, in order to secure Plaintiffs' physical release of the purchase assets.  *Id*. ¶¶ 76-78.

## IV. DISCUSSION

The Moving Defendants argue that Plaintiffs have failed to state a claim against them, mandating dismissal pursuant to Rule 12(b)(6).  In addition to challenging the sufficiency of Plaintiffs' pleading with respect to certain claims, the Moving Defendants contend that the First Amended Complaint fails to satisfy the pleading requirements of Rule 9(b), which requires a party to state allegations of fraud with particularity.  The 1848 Defendants further argue that dismissal is warranted here under the first-filed doctrine.

### A.        The First-Filed Doctrine

Because the first-filed doctrine involves a court's exercise of jurisdiction, the Court will address it first.  The first-filed rule provides that, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."  *See Manuel v. Convergys Corp*., 430 F.3d 1132, 1135 (11th Cir. 2005); *Merrill Lynch, Pierce, Fenner &*

*Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) ("In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."). "The first-filed rule is premised on judicial economy, comity amongst the district courts, and the desire to avoid potentially conflicting rulings."  *Nebula Glass Int'l, Inc. v. Budnick Converting, Inc.*, 2010 WL 473330 (S.D. Fla. Feb. 5, 2010).  Where the first-filed rule applies, the "second-filed" court will generally decline to exercise jurisdiction.

The 1848 Defendants contend that that an action initiated by 1848 Capital in the District of South Carolina, styled *1848 Capital Partners, LLC v. Sean Raimbeault, Lori-Ann Aaimbeault and WDCI, LLC f/k/a Laurentec, LLC*, Case No. 14-2212 (the "South Carolina Action"), is the first-filed case regarding the parties and claims at issue in this action.  They ask the Court to decline jurisdiction under the first-filed rule.  The 1848 Defendants' request appears to result from gamesmanship and, in any event, misapplies the first-filed doctrine.

As detailed above, Plaintiffs filed suit in South Carolina state court in April, 2013.  The original complaint stated claims against only Accurate and Sunbelt.  In June, 2013, the action was removed to federal court in South Carolina and then transferred to this Court in January, 2014 at the request of Defendants Accurate and Sunbelt.  The transferring court noted that, as part of the resolution of the defendants' motion to transfer venue, Accurate and Sunbelt consented to the amendment of Plaintiffs' complaint, and ordered that Accurate and Sunbelt execute a consent order to that effect upon transfer of venue.  *See* ECF No. [15].  Plaintiffs represent that, in May, 2014, counsel for Plaintiffs sent counsel for Defendants Accurate and Sunbelt a proposed draft of their amended complaint, which named 1848 Capital as a defendant.[1]

---

[1] At the September 29 hearing, the 1848 Defendants conceded that 1848 Capital received the draft amended complaint or the information contained therein, and implied that they initiated the South Carolina Action in partial response to Plaintiffs' aim to sue 1848 Capital.  They maintain that Plaintiffs threatened to add 1848 Capital to this action for settlement negotiation leverage, and rather than sit idly by, they sued on their own.  That may have

ECF No. 76 at 16.  1848 Capital initiated the South Carolina Action on June 6, 2014.  Plaintiffs filed their First Amended Complaint, which added 1848 Capital and the individual defendants, on June 18, 2014.

The proper focus of the first-filed doctrine is the suit or controversy, not the parties to the action.  *See*, *e.g.*, *Manuel*, 430 F.3d at 1135 (favoring forum of "first-filed suit"); *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013) (prioritizing "court initially seized of the controversy").   Courts have therefore held that how or when particular defendants are added to the action is irrelevant to the first-filed analysis.   *See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 958 (N.D. Cal. 2008) ("[F]or purposes of analyzing chronology, it is irrelevant when or how [litigant] added parties to the [action]."); *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp. 2d 579, 585 n. 48 (D .Del. 2007) ("when investigating a first-filed issue, relation back analysis is unnecessary, because" the focus is on the original complaint, not any amended complaints); *Schering Corp. v. Amgen Inc.,* 969 F. Supp. 258, 265-68 (D. Del. 1997) (in a first-to-file analysis, the focus is on the subject-matter jurisdiction, not the parties' status or presence); *Advanta Corp. v. Visa U.S.A., Inc.*, CIV.A. 96-7940, 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997) ("The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute.").  Plaintiffs' action was initiated in state court and removed to federal court over a year before the South Carolina action began.  The First Amended Complaint did not substantially alter the nature of the controversy.  That the 1848 Defendants were added to the action after 1848 Capital brought suit in South Carolina is irrelevant.  This action is the first-filed.

---

happened. However, it does not alter the first-filed analysis here.  In fact, it supports the notion that all of the claims between these parties belong in this action.

Further, given the interrelationship between Accurate, Sunbelt and 1848 Capital, and the timing of 1848 Capital's complaint on the heels of Plaintiffs' notice of their Amended Complaint, the Court cannot escape the inference that 1848 Capital instituted the South Carolina action to somehow undermine the prosecution of this action.  Courts are loathe to reward such self-serving manipulation of the first-filed rule.  *See Collegiate Licensing*, 713 F.3d at 79 ("The anticipatory suit exception to the first-filed rule applies when one party, on notice of a potential lawsuit, files a declaratory judgment action in its home forum.").  Were the first-filed rule applicable here, and it is not, the Court would be disinclined to enforce it under the circumstances.

Because the instant action was filed first, Defendants' request in the 1848 Motion to dismiss based on the first-filed doctrine is denied.

**B.      Standard for Dismissal for Failure to State a Claim**

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, (2002).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").   Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  The Supreme Court has emphasized that "[t]o survive a

motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."  ); *Iqbal*, 556 U.S. at 678.   A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).   While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### C.    Plaintiffs' FUDTPA Claim

Tolzien and Wilder highlight a recent decision interpreting FDUTPA, *Carrol v. Lowes Home Centers, Inc.*, 2014 WL 1928669 (S.D. Fla. May 6, 2014), which clarified that only "consumers" who engage in the "purchase of goods and services" are "persons" with standing to pursue a FUDTPA claim under Fla. Stat. § 501.201. *Id.* at *3.  In light of *Carrol*, Plaintiffs have withdrawn their FDUPTA claim (Count Eight of the First Amended Complaint) without prejudice to refile that claim.  *See* ECF No. [80] at 2.  Because Plaintiffs have nowhere alleged that they engaged in the purchase of goods or services from any Defendant, their FDUPTA claim will be dismissed with prejudice for failure to state a claim, pursuant to Rule 12(b)(6).  *See Hall v. United Ins. Co. of Amer.*, 367 F.3d 1255, 1263 (11th Cir. 2004) ("denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal"); *Christman v. Walsh*, 416 Fed. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss."); *Milani v. OneWest Bank FSB*, 491 Fed. App'x 977, 980-81 (11th Cir. 2012) (finding that "it was no[t] error for the district court to deny plaintiff leave to his complaint where any amendment would be futile"); *Smith v. Residential Capital, LLC*, 2014 WL 1767821, at *4 (N.D. Ga. May 2, 2014) (dismissing with prejudice where amendment would be futile); *Marshall v. Aryan Unlimited Staffing Solution*, 2013 WL 4759050, at *3 (S.D. Fla. Sept. 3, 2013) (same).

### D.    Plaintiffs' Claim for Constructive Fraud

At the September 29 hearing, Plaintiffs conceded that the clear contractual language in the APA defining the relationship between the Laurentec transaction parties as arm's-length "moots" their constructive fraud claim.  That claim will accordingly be dismissed with prejudice.

Florida law is clear that some fiduciary relationship is required in order to state a claim for constructive fraud.  *See Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 Fed. App'x 878, 881 (11th Cir. 2008) (citing *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003) (first requirement for constructive fraud claim is the existence of a fiduciary relationship); *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3rd DCA 2003) ("Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused. . . ."); and *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419, 422 (Fla. 1929) ("[I]t is essential that the confidential relationship be established before a constructive trust will be raised.")).  Plaintiffs have not alleged that any fiduciary relationship existed between them and Defendants by virtue of the Laurentec transaction.  Nor could they.  *See Life Receivables Ireland Ltd. v. Babcock & Brown Inv. Mgmt. Partners LP*, 478 Fed. App'x 658, 660 (11th Cir. 2012) (arm's-length buyer-seller relationship is not itself a fiduciary relationship); *United States v. Stephen*, 440 Fed. App'x 824, 829 (11th Cir. 2011) (same).  As they themselves admit, the transaction documents expressly provide that the APA resulted from an arm's-length negotiation, that the parties relied solely and completely on their own judgment in executing the APA, and that no party was acting under duress, whether economic or physical, in executing the APA.  *See* APA § 10.8.

Plaintiffs note in their Response that "[w]here, as here, there is not an express fiduciary relationship, one may be implied in law based on the specific factual situation surrounding the transaction and the relationship of the parties."  *Crusselle v. Mong*, 59 So. 3d 1178, 1181 (Fla. 5th DCA 2011).  "The indispensable condition of an implied fiduciary relationship is 'some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'"  *Thunder Marine, Inc. v. Brunswick Corp.*, 277 Fed.

App'x 910, 913 (11th Cir. 2008) (quoting *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993); *see also Crusselle*, 59 So. 3d at 1181 ("An implied fiduciary relationship will lie when there is a degree of dependency on one side and an undertaking on the other side to protect and/or benefit the dependent party.") (citing *Masztal v. City of Miami,* 971 So. 2d 803, 809 (Fla. 3d DCA 2007)).   Plaintiffs do allege that they relied on certain representations by Plaintiffs in engaging in the Laurentec transaction – e.g., that the corporate Defendants were not in default on their senior loans.  But this falls short of the dependency by Plaintiffs on Defendants, or an undertaking by Defendants to protect/benefit Plaintiffs, necessary to imply a fiduciary relationship.  Plaintiffs' claim for constructive fraud, therefore, fails.

     **E.**    **Plaintiffs' Alter Ego Claim**

Plaintiff has asserted a separate claim for "alter ego" in order to render 1848 Capital directly liable for the actions of Accurate and Sunbelt.  Both Plaintiffs and the 1848 Defendants appear to conflate "alter ego" with "veil piercing."   Under Florida law, at least, alter ego (i.e., domination and control) is but one element of the veil piercing doctrine.  *See Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998) ("Three factors must be proven by a preponderance of the evidence: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.").  Perhaps more importantly, while the parties have replicated Florida's veil piercing standard, the law of the corporate Defendants' domicile/incorporation may govern the alter ego issue.  *Compare United States v. Clinical Leasing Serv., Inc.*, 982 F.2d 900, 902 n.5 (5th Cir. 1992) (applying Louisiana law rather than the

CASE NO.  14-CIV-20136-BLOOM/Valle

law of Delaware, the state of incorporation, to decide an alter ego claim) *with Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456-57 (2d Cir. 1995) (relying on New York choice of law principles to decide an alter ego claim under Delaware law as the state of incorporation).  *See also Aldana v. Fresh Del Monte Produce, Inc.*, 2007 WL 7143959, at *6 (S.D. Fla. Aug. 30, 2007) (federal court could apply state alter ego doctrine to determine federal issue of personal jurisdiction). Delaware law, for example (1848 Capital being a Delaware company), may prove considerably more strict than Florida law on protecting the sanctity of the corporate form.  *See*, *e.g.*, *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008) (disregarding the corporate form only in the "exceptional case" and after "a fact intensive inquiry").

Happily, the Court does not need to undertake a choice-of-law analysis at this stage in the litigation.  "Florida courts permit alter ego allegations to be pled as a distinct cause of action." *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (citing *Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 740 (Fla. 5th DCA 2000)); *see also Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984) ("allegations of mere instrumentality and improper conduct clearly state a cause of action").  However, federal courts generally find that "[a]lter ego is not a separate cause of action for which relief can be granted; rather, . . . alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity."  *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2010 WL 1531489, at *9 (S.D. Fla. April 16, 2010) (dismissing alter ego count with prejudice and requiring plaintiff to re-plead allegations regarding alter ego in the body of the complaint); *see Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (veil piercing "is not itself an independent[] cause of action, but rather is a means of imposing liability on an underlying cause of action."); *Sheppard v. Jodice*, 2007 WL

2225804 (N.D. Ga. July 30, 2007) (Alter ego as a theory or doctrine, "like respondeat superior or agency, is a means by which one entity may be held liable for the actions of another.  It does not, however, provide a cause of action in and of itself for the award of damages."); *Swift v. Pandey*, 2013 WL 6054853 (D.N.J. Nov. 13, 2013) (alter ego is an "equitable *remedy* through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form").

Plaintiffs' alter ego claim will therefore be dismissed with prejudice, but Plaintiffs will be permitted to employ the doctrines of alter ego or veil piercing to assert liability against 1848 Capital with respect to the remainder of their claims, as relevant.[2]  *See Oginsky*, 784 F. Supp. 2d at 1373 (dismissing alter ego claim with prejudice, but permitting plaintiff to plead allegations related to alter ego claim as to other claims).

### F.      Plaintiffs' Claim for Unjust Enrichment

The 1848 Defendants argue that Plaintiffs have failed to state a claim for unjust enrichment.  "The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Florida Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1242 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So.2d 205, 207 (Fla. 2d DCA 1995)).

The 1848 Defendants cite authority requiring the "direct" conferral of a benefit to establish unjust enrichment. *See Peoples Nat. Bank of Commerce v. First Union Nat. Bank of*

---

[2] The Court notes that, substantively, Plaintiffs have alleged that 1848 Capital exerted domination and control over Sunbelt and Accurate, *see* Am. Compl. ¶¶ 7-8, 50, 111 ("1848 Capital describes itself as 'ultimately financially responsible for both Accurate and Sunbelt.'"), and have alleged that Defendants' corporate structure was used to perpetuate a fraud (e.g., substituting Accurate for Sunbelt and masking 1848 Capital as the true beneficiary of the transaction).

*Fla.*, N.A., 667 So. 2d 876, 879 (Fla. 3d DCA 1996).  They argue that 1848 Capital was not "directly" benefited by the Laurentec transaction, requiring dismissal of the unjust enrichment claim.  Plaintiffs, in response, cite *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867 (E.D. Pa. 2012), in which the court closely analyzed Florida law and concluded that "Florida law allows unjust enrichment claims to arise from the conferral of an indirect benefit."  *Id.* at 928-29 (citing *Shands Teaching Hospital and Clinics, Inc. v. Beech Street Corp.*, 899 So.2d 1222, 1227-28 (Fla. 1st DCA 2005); *Coffee Pot Plaza Partnership v. Arrow Air Conditioning and Refrigeration, Inc.*, 412 So.2d 883, 884 (Fla. 2d DCA 1982); and *Commerce P'ship 8098 LP v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997)).  Because Plaintiffs' unjust enrichment claim survives under either interpretation of Florida law, the Court need not reach that issue.

First, Plaintiffs specifically allege that the Defendants undertook the Laurentec transaction on behalf of 1848 Capital.  That is, they allege conferral of a direct benefit.  Moreover, Plaintiffs have described Accurate and Sunbelt as the alter egos of 1848 Capital.  While their separate alter ego claim does not survive, that theory does.  As such, Plaintiffs have additionally alleged a direct benefit conferred on 1848 Capital through its alter egos.  Dismissal of Plaintiffs' unjust enrichment claim is, therefore, unwarranted.

### G.    Plaintiffs' Claims for Fraud and Civil Conspiracy

The Moving Defendants further challenge the sufficiency of Plaintiffs' fraud-based claims under Fed. R. Civ. P. 9(b).  They argue that Plaintiffs have failed to plead with particularity in that the First Amended Complaint does not contain specific allegations as to any of the separate Defendants, but rather, improperly "lumps together" the several Defendants in the

same allegations and claims.  They further argue that Plaintiffs fail to plead each of the fraud-based claims themselves with the requisite specificity.

### 1.        Rule 9(b) Heightened Pleading Standard

In addition to the Rule 8(a) plausibility pleading requirement, Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b) thus forces a plaintiff to "offer more than mere conjecture," *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a complaint plead facts giving rise to an inference of fraud."  *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. App'x 81, 86 (11th Cir. 2008).  "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (Rule 9(b) requires that the complaint state the "who, what, when where, and how" of the alleged misconduct).  However, "Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief."  *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

The purpose of the Rule 9(b) particularity requirement is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious

charges of immoral and fraudulent behavior." *Zeimba*, 256 F.3d at 1202 (internal quotations omitted).  "Essentially, the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1033 (S.D. Fla. 2007) (quotations omitted); *see also Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) ("The rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . .") (quotations omitted).

"[I]n a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks*, 116 F.3d at 1381 (quotations omitted).  Rule 9(b) therefore requires a plaintiff to notify each defendant of its role in the alleged fraud and prevents a plaintiff from merely "lumping together" multiple defendants.  *Id.*; *W. Coast Roofing*, 287 Fed. App'x at 86 ("generalized allegations 'lumping' multiple defendants together are insufficient").

### 2.    Plaintiffs' Fraud-Based Claims Generally Satisfy Rule 9(b)

With respect to the broad allegations of fraud and civil conspiracy, Plaintiffs' First Amended Complaint satisfies the Rule 9(b) pleading standard.[3]  As detailed above, the complaint sets out a sufficiently narrow timeline, including specific events, documents and places, in which the alleged fraud took place.  *See Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d

---

[3] "[A] claim for unjust enrichment is subject to Rule 9(b) only if it is 'premised on fraud.'" *United States v. Gericare Med. Supply Inc.*, 2000 WL 33156443, at *10 (S.D. Ala. Dec. 11, 2000) (citations omitted).  On the face of their complaint, Plaintiffs do not premise their separate unjust enrichment claim itself on fraud, but rather on non-payment of the Accurate Note.  Rule 9(b) is therefore inapplicable.  In any event, the complaint clearly alleges that "Accurate, Sunbelt, and 1848 Capital enjoyed and realized the benefits of Laurentec's assets by retaining and utilizing them in the operation of their business."  Am. Compl. ¶ 140.  Given the alleged interrelationship between the corporate Defendants, that would be sufficiently specific to satisfy Rule 9.  (Plaintiffs did not subject the individual Defendants to their unjust enrichment claim.)

1045, 1058-59 (S.D. Fla. 2009) ("Plaintiffs are not expected to specify the exact time and the particular place of each factual omission or misrepresentation, but they must provide a sufficiently narrow time frame from which defendants could derive notice as to when the misrepresentations were made."); *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1307 (S.D. Fla. 2000) (six-month timeframe was sufficiently narrow and general location of fraud was sufficiently specific).  Further, the Complaint describes, with particularity, Plaintiffs' theory of Defendants fraudulent misconduct:  restructuring the Laurentec transaction to substitute Accurate for Sunbelt with knowledge that Accurate had been in default on its senior indebtedness and could not make good on the Accurate Note; convincing Plaintiffs to accept the Sunbelt Guarantee instead of a security interest in the purchase assets also knowing that Sunbelt, due to its default, could not honor the Guarantee; hiding Accurate and Sunbelt's defaults and inability to satisfy their obligations; intentionally defaulting on their senior facility (despite having adequate liquidity to avoid default) in order to avoid paying Plaintiffs; and engineering Plaintiffs' release of the physical assets with the intention to refuse to make any future payments under the Sunbelt Note.

Further, Plaintiffs have sufficiently alleged that all of the named Defendants knew about and participated in the fraudulent scheme.  The Complaint clearly states a claim for fraud on the part of Accurate and Sunbelt.  At the intersection of Florida civil conspiracy law and Rule 9(b), "[s]o long as a valid tort claim is alleged to have been committed, and the named Defendants are alleged to have conspired with the primary tortfeasor, the civil conspiracy claim may proceed." *Liva v. Mendolia*, 2014 WL 2118814, at *4 (S.D. Fla. May 21, 2014).  Therefore, generally, Plaintiffs' claims for fraud and civil conspiracy are plead with the requisite particularity.

**3.    Plaintiff's Fraud-Based Claims Are Pled With The Requisite Specificity Only As To Certain Defendants**

However, Plaintiffs have failed to satisfy the Rule 9(b) particularity requirement with respect to all of the named Defendants.  The First Amended Complaint does not merely "lump together" the separate corporate entities and individuals as one amorphous defendant.  And Rule 9(b) does not require that a Plaintiff copy and paste the same language applicable to separate defendants into dozens of separate paragraphs.  *See Nat'l Numismatic Certification, LLC. v. eBay, Inc.*, 2008 WL 2704404, at *16 (M.D. Fla. July 8, 2008) (listing of multiple defendants permitted "in the context of a narrative;" plaintiff need not simply "multiply the number of paragraphs in the [c]omplaint").  But, in the context of the claims alleged by Plaintiffs here, it is insufficient for the Complaint to simply allege, e.g., that "Sunbelt, 1848 Capital, and Accurate and its respective agents, together with Messrs. Tolzien, Wilder, DaGrosa, Neithardt and Sicilian [] represented to Plaintiffs that Accurate and Sunbelt were performing on their obligations under the Chatham loan."  Am. Compl. ¶ 60.

With respect to 1848 Capital, the First Amended Complaint alleges that the Defendants engaged in the Laurentec transaction *on behalf of* 1848 Capital; that 1848 Capital directed the restructuring of the transaction; and that 1848 Capital, either through its subsidiaries or alter egos Accurate and Sunbelt, perpetuated the alleged fraudulent conduct.  The Complaint plainly alleges that 1848 Capital was responsible for the fraudulent restructuring of the Laurentec transaction, to Plaintiffs' detriment.  It further claims that 1848 Capital was the ultimate beneficiary of the alleged fraud.  Even without Plaintiffs' ability to employ the alter ego doctrine (and certainly with it), Rule 9(b) is clearly satisfied as to 1848 Capital.

Plaintiffs have also met the pleading requirement with respect to Defendants Tolzien and Wilder.  The First Amended Complaint specifically alleges that Tolzien was intimately involved

in soliciting and directing the transaction.  Tolzien allegedly met with Mr. Raimbeault; managed the initial negotiations and Letter of Intent; communicated to Plaintiffs that 1848 Capital and Sunbelt would be financing the transaction without other lenders (i.e., Chatham); contacted Plaintiffs to inform them about Chatham's newly required "sign off" on the transaction and that their approval was a "simple formality;" subsequently stated to Plaintiffs that Chatham and/or 1848 Capital refused to allow Plaintiffs to take a security interest in the sale assets; and ultimately convinced Plaintiffs to accept the Sunbelt guarantee instead.  Plaintiffs further allege that Wilder, to initiate the proposed transaction, visited Plaintiffs in South Carolina to discuss purchasing Laurentec's assets, and that Wilder wired Plaintiffs the $35,000 to keep the deal alive after the Letter of Intent expired.  This was, in addition to the less-specific allegations in the Complaint as to Tolzien's and Wilder's representations to Plaintiffs that Accurate and Sunbelt were performing on their senior debt despite knowing that they were, in fact, in default.  The First Amended Complaint fairly puts Tolzein and Wilder on notice, as point-people for the Laurentec transaction, of Plaintiffs' allegations of fraud and conspiracy.

Despite several times listing the Defendants together and describing many of their actions identically, Plaintiffs have done enough here to meet the Rule 9(b) standard as to Defendants 1848 Capital, Tolzien and Wilder.  *See, e.g.*, *Heater*, 510 F. Supp. 2d at 1036 (S.D. Fla. 2007) (Rule 9(b) satisfied despite defining all defendants together given day-to-day interrelationship between multiple defendants as related to allegations); *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2008 WL 926512, at **5-7 (S.D. Fla. Mar. 31, 2008) (Rule 9(b) satisfied, despite collective allegations against separate defendants and "minimal individualized allegations," against defendants as to whom complaint did assert specific facts and identify as separate and independent entities); *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*,

2014 WL 1237685, at *7 (S.D. Fla. Mar. 26, 2014) (collective references to defendants and allegations of fraud did not violate Rule 9(b) where complaint alleged sufficient facts and enough specific allegations as to separate defendants); *S.E.C. v. Levin*, 2013 WL 5588224, at *7 (S.D. Fla. Oct. 10, 2013) (complaint provided sufficient information as to separate defendants involved in same alleged fraud).

However, the same is not true with respect to Defendants Sicilian, DaGrosa, Jr. and Neithardt.  In terms of those individual Defendants, aside for alleging their control over the corporate Defendants and their actions, the First Amended Complaint alleges that Sicilian was introduced to Mr. Raimbeault during initial negotiations; that Sicilian, DaGrosa, Jr. and Neithardt were all involved in the Letter of Intent and subsequent negotiations which resulted in the APA, Accurate Note and Sunbelt Guarantee; that Sicilian, DaGrosa, Jr. and Neithardt (listed alongside all of the other Defendants) represented to Plaintiffs that Accurate and Sunbelt were performing their obligations under the senior loan; that Sicilian, DaGrosa, Jr. and Neithardt (listed alongside all of the other Defendants) all knew but did not disclose that the corporate Defendants were in default; that Sicilian, DaGrosa, Jr. and Neithardt (listed alongside all of the other Defendants) all knew, or had reason to know, that the Intercreditor Agreement would preclude enforcement of Accurate and Sunbelt's obligations to Plaintiffs; and that Sicilian, DaGrosa, Jr. and Neithardt all personally reviewed and approved the Laurentec transaction. However, and critically, Plaintiffs do not state what role they allege Sicilian, DaGrosa, Jr. and Neithardt to have had in structuring the Laurentec transaction so as to defraud Plaintiffs, or concretely what those Defendants represented to Plaintiffs, and when.  In that regard, Plaintiffs have not supplied as much specificity as should be readily available to them, based on their own allegations.

As it currently stands, Plaintiffs' Complaint, by lumping together the several Defendants and by failing to adequately state the what, when and how as to Sicilian, DaGrosa, Jr. and Neithardt, obscures the roles those Defendants individually played in the alleged fraud, and fails to provide them fair notice of their alleged misconduct as required by Rule 9(b).  *See Great Florida Bank v. Countrywide Home Loans, Inc*., 2011 WL 382588, **3-4 (S.D. Fla. Feb. 3, 2011) (references to defendants plead "in a way that obscures the identity of the party or parties that are alleged to have actually committed the fraudulent actions . . . [and] that makes it impossible for Defendants to know which of the Defendants is alleged to have made the claimed statements"); *Joseph v. Bernstein*, 2014 WL 4101392, at *6 (S.D. Fla. Aug. 19, 2014) (pleading failed to state who, what, when, where and how of allegedly false statements); *Cordova v. Lehman Bros.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007) (combined defendants, rather than identifying specific misrepresentations or stating how actions attributable to individual defendant) *aff'd in rel. part sub nom. Puterman v. Lehman Bros.*, 332 Fed. App'x 549 (11th Cir. 2009).

However, as noted above, conspiracy claims are not subject to the same level of scrutiny under Rule 9(b) as are general fraud claims.  "To satisfy the heightened pleading standard for conspiracy claims, '[t]he plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some evidence of agreement between the defendants.'" *Prestige Restaurants & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 2010 WL 680905, at *4 (S.D. Fla. Feb. 23, 2010) (quoting *Albra v. City of Fort Lauderdale*, 232 Fed. App'x 885, 890-91 (11th Cir. 2007)); *see also Liva v. Mendolia*, 2014 WL 2118814 at *4.  This comports with the less stringent application of the Rule 9(b) heightened pleading standard "when specific factual information about the fraud is peculiarly within the

defendant's knowledge or control."  *Hill v. Morehouse Med. Associates, Inc.*, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003).  The pleading standard must accommodate the reality that conspiracies take place behind closed doors.  Plaintiffs have properly stating a claim for fraud and conspiracy against several of the Defendants.  They have further alleged Sicilian, DaGrosa, Jr. and Neithardt's participation by conspiracy in that fraud.  They have, therefore, satisfied Rule 9(b)'s pleading standard with respect to their claim for civil conspiracy against all Defendants.

## V. CONCLUSION

The first-filed doctrine does not bar the Court's consideration of this action.  Taking the facts as alleged in the First Amended Complaint as true, Plaintiffs have failed to state a claim for violation of FUDTPA or constructive fraud, and their alter ego claim is not recognized as a stand-alone claim.  Those claims must therefore be dismissed pursuant to Rule 12(b).  Plaintiffs have properly stated a claim for unjust enrichment against the corporate Defendants.  Plaintiffs have pled their fraud-based claims with sufficient plausibility and with the required particularity, with respect to Defendants 1848 Capital, Tolzien and Wilder.  They have further plead their claim for civil conspiracy with the requisite specificity against to Defendants Sicilian, DaGrosa, Jr. and Neithardt.  But they have failed to do so with respect to their fraud claim against Defendants Sicilian, DaGrosa, Jr. and Neithardt.  Plaintiffs will therefore be required to amend their pleading to state that claim with respect to those Defendants with the requisite specificity. *See*, *e.g.*, *F.D.I.C. v. Briscoe*, 2012 WL 8302215, at *8 (N.D. Ga. Aug. 14, 2012) (where defendants improperly lumped together, claims dismissed without prejudice and plaintiff granted leave to replead, and collecting cases).

Accordingly, it is hereby **ORDERED AND ADJUDGED** that

1.  The Motion to Dismiss filed by Defendants 1848 Capital Partners LLC Joseph E. DaGrosa, Jr., David Neithardt and John Sicilian, ECF No. [66] is hereby **GRANTED IN PART** and **DENIED IN PART**, as follows:

    a.  Defendants' motion to dismiss Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45] based on the first-filed doctrine is **DENIED**.

    b.  Defendants' motion to dismiss Counts One, Five and Seven of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45] for failure to state a claim with respect to 1848 Capital Partners LLC is **DENIED**.

    c.  Defendants' motion to dismiss Count One of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45] for failure to state a claim with respect to Joseph E. DaGrosa, Jr., David Neithardt and John Sicilian is **DENIED**.

    d.  Count Five of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45] against Joseph E. DaGrosa, Jr., David Neithardt and John Sicilian is **DISMISSED** without prejudice, for failure to plead with specificity as required by Fed. R. Civ. P. 9(b).  Plaintiffs are **GRANTED** leave to amend with respect to that claim **by October 15, 2014**.

CASE NO.  14-CIV-20136-BLOOM/Valle

e.     Count Four of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45], is **DISMISSED** with prejudice.  Plaintiffs may employ the doctrines of alter ego or veil piercing with respect to their other claims.

f.     Count Six of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45], is **DISMISSED** with prejudice.

2.     The Motion to Dismiss filed by Defendants James Tolzien and James Wilder, ECF No. [73] is hereby **GRANTED IN PART** and **DENIED IN PART**, as follows:

a.     Defendants' motion to dismiss Counts One and Five of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45] for failure to state a claim is **DENIED**.

b.     Count Six of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45], is **DISMISSED** with prejudice.

c.     Count Eight of Plaintiffs Sean Raimbeault and Lori-Ann Raimbeault's First Amended Complaint, ECF No. [45], is **DISMISSED** with prejudice.

CASE NO.  14-CIV-20136-BLOOM/Valle

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, this 30 day of September, 2014.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record